T.C. Summary Opinion 2002-39


UNITED STATES TAX COURT


JOSEPH R. AND DIANA K. TRUDEL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4238-01S.          Filed April 15, 2002.


Joseph R. Trudel, pro se.

Andrew R. Moore, for respondent.


WOLFE, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the

Tax Court Rules of Practice and Procedure.

Some of the facts have been stipulated and are so found. Petitioners resided in Sunnyvale, California, when the petition was filed. References to petitioner are to Joseph R. Trudel.

Respondent determined a deficiency of $2,100 in petitioners' 1997 Federal income tax. The issues for decision are: (1) Whether petitioner's writing and handyman activities during 1997 were engaged in for profit within the meaning of section 183; and (2) whether petitioners are entitled to a deduction for self-employed health insurance expenses under section 162(l).

## Background

Petitioner has been employed as a computer programmer and has worked in consumer affairs as an investigator of consumer complaints at a state attorney general's office. During the year in issue, petitioner worked for about 6 months at Coast Personnel Services. Petitioner has also engaged in a series of writing activities and handyman, landscaping, and gardening activities (handyman activities) that are the subject of this case.

### Writing Activity

Petitioner became interested in writing while attending Grossmont College in the early 1980s. He joined the staff of the college newspaper and contributed articles as a staff writer. In 1983 petitioner founded a consumer newsletter that he named "San Diego Scope". The newsletter, which was published six times each year, addressed various consumer-related issues such as rental

housing, local automobile repair services, and restaurant reviews. After approximately 9 months of operation, the newsletter had 43 subscribers who each paid $9 for an annual subscription. The newsletter never generated any significant revenue, and petitioner discontinued publication after only a few years. Petitioner was employed as a computer programmer throughout the time he published the newsletter. After terminating publication of his newsletter, petitioner began contributing occasional film and theater reviews to local newspapers. The newspapers paid him $50 per article. Petitioner also claims that he made use of his writing ability in various employments over the years.

During the summer of 1997, petitioner and his wife took an 8-week road trip from California to the east coast and back. Petitioner claims that they took the trip so that he could write a series of articles about various Civil War sites. His alleged target audience was people who were interested in both traveling and the Civil War. During the trip petitioner visited Civil War sites and conducted several interviews. Petitioner wrote seven 3- to 5-page articles that he submitted to national magazines including the National Geographic, AAA Magazine, Via Magazine, and Travel & Leisure.

Petitioner failed to arrange publication of any of his articles. Petitioner had no gross receipts from his writing activity during 1997 and has never received any compensation for

the articles he wrote during his trip in 1997.

Handyman Activity

In 1993 or 1994 petitioner began performing various handyman services for compensation.  Petitioner's business card bears the caption "Home Services" and advertises that petitioner performs window washing, landscaping, gardening, trash removal, planting, and yard work.

Tax Return

On the Schedule C, Profit or Loss From Business, of their 1997 Federal income tax return, petitioners grouped petitioner's writing activity and his handyman activity as a single business: GARDENING SERVICE/TRAVEL WRITER.  They reported the following items on their Schedule C:

| Income | |
| --- | --- |
| Gross receipts | -- |
| Cost of goods sold | -- |
| Gross income[1] | $370 |
| | |
| Expenses | |
| Advertising | $184 |
| Office expense | 118 |
| Repairs and maintenance | 455 |
| Supplies | 146 |
| Taxes and licenses | 20 |
| Travel | 6,768 |
| Meals and entertainment[2] | 1,527 |
| Utilities | 120 |
| Other expenses[3] | 3,764 |
| | |
| Total expenses | 13,102 |
| Tentative loss | (12,732) |
| Net loss[4] | -- |

[1] All of the reported gross income derived from petitioner's handyman activity.

[2] Petitioners reported meals and entertainment expenses of

$3,054 but, pursuant to sec. 274(n)(1), claimed a deduction for only $1,527 of such expenses.

[3] The "Other expenses" consisted of business publication expenses of $979 and automobile expenses of $2,785. The automobile expenses were based on 8,843 miles of travel for business purposes multiplied by the standard mileage rate of $0.315 per mile.

[4] Petitioners mistakenly did not make an entry on the return line for net loss. Because petitioners did not report any expenses under sec. 280A for business use at their home, their net loss is equal to their tentative loss of $12,732.

On their 1997 Federal income tax return, petitioners also claimed a deduction of $880 for self-employed health insurance expenses. In the notice of deficiency, respondent disallowed all of the expenses that petitioners reported in connection with their Schedule C activities on the grounds that they had not engaged in these activities for profit. Respondent also determined that petitioners were not entitled to deduct any amount paid for the costs of self-employed health insurance.

## Discussion

### I. Activity Not Engaged in for Profit

Section 183(a) provides that if an activity engaged in by an individual is not engaged in for profit, no deduction attributable to such activity shall be allowed, except as provided in section 183(b). In the case of an activity not engaged in for profit, section 183(b)(1) allows deductions for expenses that would be allowable without regard to whether the activity is engaged in for profit. Section 183(b)(2) allows a deduction for expenses that would be deductible only if the activity were engaged in for profit, but only to the extent that

the gross income derived from the activity exceeds the deductions allowed by section 183(b)(1).

An "activity not engaged in for profit" means any activity other than one for which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. Sec. 183(c). Section 162 allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. In the case of an individual, section 212 allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income.

To deduct the expenses of an activity under either section 162 or section 212, a taxpayer must show that he engaged in the activity with an actual and honest objective of making a profit. Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Fuchs v. Commissioner, 83 T.C. 79, 98 (1984); sec. 1.183-2(a), Income Tax Regs. Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Beck v. Commissioner, 85 T.C. 557, 569 (1985); Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Whether a taxpayer has an actual and honest profit objective is a question of fact to be resolved from all the relevant facts and

circumstances.  Elliott v. Commissioner, 84 T.C. 227, 236 (1985), affd. without published opinion 782 F.2d 1027 (3d Cir. 1986); sec. 1.183-2(b), Income Tax Regs.  Greater weight is given to objective facts than to a taxpayer's statement of intent. Elliott v. Commissioner, supra at 236-237; sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides the following nonexclusive list of factors which normally should be considered in determining whether an activity is engaged in for profit:  (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.  No single factor, nor the existence of even a majority of the factors, is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative.

Although petitioners reported the writing activity and the handyman activity as a single business on their Schedule C, we conclude that they are two distinct activities and must be

analyzed separately for purposes of section 183.  See Abbene v. Commissioner, T.C. Memo. 1998-330; sec. 1.183-1(d)(1), Income Tax Regs.

A. Handyman Activity

Petitioner began the handyman activity in 1993 or 1994. With respect to this activity during 1997, petitioners reported on their Schedule C gross income of $370 and total expenses of approximately $1,100.  On Schedule C petitioner did not allocate his expenses between the handyman activity and the writing activity.  Nevertheless the record indicates that expenses for supplies ($146), advertising ($184), business license ($20), building materials ($118), and repairs and maintenance ($455) may properly be allocated to the handyman activity.

Petitioners' summary of expenses indicates that 592 miles were driven in connection with the handyman activity. Consequently, expenses of $186 (592 multiplied by $0.315) were attributable to automobile mileage expenses of the handyman activity.  The automobile mileage expenses of this activity amounted to more than half of petitioner's gross receipts from this activity.

At trial, when questioned as to why the gross receipts of his handyman activity, including landscaping and gardening services, were only $370 for the entire year, petitioner replied "That's just the seasonal nature of the business."  Petitioner also attributed the modest amount of gross receipts to his

preoccupation with other activities during 1997, including his 6-month stint working as an independent contractor for Coast Personnel Services and his 8-week trip to the east coast.  These excuses for petitioner's failure to receive income from the handyman and landscaping activity simply are not credible.

Given the relative simplicity of the activity and the fact that petitioner has conducted it for several years, there is no plausible explanation why petitioner's total expenses are three times his gross receipts if he was truly engaged in the activity for profit.  On this record, we conclude that petitioner's handyman activity during 1997 was not engaged in for profit within the meaning of section 183.  Consequently deductions from the handyman activity are limited to the $370 income reported from that activity.

B. <u>Writing Activity</u>

Petitioner's writing activity is concerned entirely with an 8-week cross-country trip he took with his wife in the spring and summer of 1997.  Petitioner claims that he is a professional writer, planned this trip to conduct research for a series of travel articles, particularly concerning the Civil War, and kept receipts and records showing his expenses of more than $12,000.

Petitioner is not trained as a professional writer.  Prior to 1997, he had dabbled at writing by preparing film and theater reviews and submitting them to local newspapers for publication. He was paid $50 for each of these occasional pieces.  Petitioner

has no training as a historian and no expertise concerning the Civil War.

Petitioner made no advance arrangements to profit from his proposed writings during the summer travel. He did not employ a literary agent or contact publishers or magazines in advance. Instead, during the trip he prepared a series of pieces, apparently written quickly, since they are replete with spelling and punctuation errors, and then submitted the unsolicited articles to national magazines such as the National Geographic. All the articles were rejected, some with the explanation that the publication did not accept unsolicited material. Petitioner did not receive any revenue at all from his writing with respect to his travels in 1997.

Petitioner does not have background or training as a writer or historian. He did not prepare for the activity in issue in a businesslike way. He did not spend substantial time preparing or marketing the writing. He has never supported himself by his writing and has no history of success in professional writing activities. The activity resulted in no income and substantial expenses. Although petitioners are not wealthy people, they have income from wages. During the year in issue, petitioners reported wages of $44,559 and unemployment compensation of $5,980. They claimed tax benefits by offsetting a loss of $12,732 from their Schedule C activities against their income from other sources.

Petitioner agrees that there were personal and recreational benefits to the cross-country travel. The record clearly shows that the travel was a vacation trip. Petitioner enjoys writing and does so without regard to profit or loss. We conclude that, during the year in issue, petitioner's writing activity was not engaged in for profit within the meaning of section 183.

## Conclusion

The filing of a Schedule C was an afterthought to petitioners. Petitioner admits that he had never filed a Schedule C prior to the year in issue, and that the reason he decided to file a Schedule C for the year in issue was so that he could deduct the travel expenses from his trip.

Because petitioner's writing and handyman activities were not engaged in for profit, petitioners may not deduct the expenses of the activities under either section 162(a) or section 212. Rather, their deductions are limited to those allowed by section 183. Section 183(b)(2) allows petitioners to offset expenses against any income generated by an activity, despite the fact that the activity is not an activity engaged in for profit. On their Schedule C for 1997 petitioners claimed gross income of $370 and total expenses of $13,102. Accordingly, $12,732 of petitioners' expenses are not deductible. In the notice of deficiency, respondent disallowed petitioners' total expenses of $13,102, instead of disallowing only the $12,732 that petitioners deducted as a business loss.

II.  Health Insurance Deduction

We next consider whether petitioners are entitled to deduct self-employed health insurance expenses of $880.  Section 162(l)(1) permits a self-employed individual to deduct 40 percent of the "amount paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents."  The deduction, however, may not exceed the "taxpayer's earned income (within the meaning of section 401(c)) derived by the taxpayer from the trade or business with respect to which the plan providing the medical care coverage is established."  Sec. 162(l)(2)(A).

The term "earned income" is defined by section 401(c), in part, as "the net earnings from self-employment (as defined in section 1402(a))".  Sec. 401(c)(2)(A).  Section 1402(a), in turn, defines "net earnings from self-employment", as relevant to this case, as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business".

Because petitioners did not have net earnings from self-employment within the meaning of section 1402(a), they did not have earned income within the meaning of section 401(c), and, consequently, are not entitled to a deduction for self-employed health insurance expenses for the year in issue pursuant to section 162(l)(2)(A).

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.